UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**KIMBERLY HAWKINS,**
an individual,

        **Plaintiff,**        Case No.:

*-vs-*        HON:

**MICHIGAN BELL TELEPHONE COMPANY,**
**d/b/a AT&T,**
a domestic profit corporation,

        **Defendant.**
_____/

BURGESS SHARP & GOLDEN, PLLC
Attorneys for Plaintiff
Heidi T. Sharp (P 69641)
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@burgess-sharp.com
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Kimberly Hawkins ("PLAINTIFF"), through her attorneys at Burgess Sharp & Golden, PLLC, states the following for her Complaint against Michigan Bell Telephone Company, d/b/a AT&T, ("DEFENDANT").

1

1. Plaintiff is a resident of the Township of Macomb, Macomb County, State of Michigan.

2. Defendant is a domestic profit corporation incorporated in Michigan, and conducting business throughout the State of Michigan.

3. The events giving rise to this cause of action occurred in the City of Detroit, Wayne County, Michigan.

4. At all relevant times, Plaintiff was employed by Defendant.

5. This court has jurisdiction pursuant to the Americans with Disabilities Act, 42 USC 12101, et seq.

**FACTUAL ALLEGATIONS**

6. Plaintiff began working for Defendant as a on or about March 20, 1995.

7. Plaintiff worked diligently for Defendant and last held the position of service representative.

8. Plaintiff has suffered from depression and chronic anxiety for many years; she more recently received the diagnosis of post-traumatic stress disorder.

9. Plaintiff's conditions are disabling conditions under the Americans with Disabilities Act, in that they affect major bodily functions, including but not limited to her ability to think, sleep, perform self-care, affect her appetite, energy level, concentration, daily behavior and/or self-esteem.

10. Throughout Plaintiff's career with Defendant she has had various leaves of absences approved by the Defendant and/or covered by the Family Medical Leave Act for her disabling conditions.

11. In or about November 13, 2017 Plaintiff began an extended leave of absence after her conditions worsened. Plaintiff's mother had recently passed away after an extended illness and it caused an exacerbation of Plaintiff's conditions.

12. From November 13, 2017 – May 31, 2018 ("her leave") Plaintiff was off work seeking treatment for her conditions. During that time period she received continuing health treatment with various therapies after various providers.

13. Defendant's leave of absence and disability claims are administered by a third-party vendor called AT&T Integrated Disability Service Center ("IDSC").

14. Throughout the period of her leave Plaintiff provided all requested and necessary documentation to the IDSC. The IDSC, on behalf of Defendant, approved her leave due to her disability and approved her to receive short term disability benefits.

15. Throughout the period of her leave Plaintiff was listed as on "approved disability" leave.

16. Plaintiff's doctor provided documentation that Plaintiff could return to work as of June 1, 2018 and she did begin work on that date.

17. During the time period that Plaintiff was on leave, the office which she was stationed at was closed. Plaintiff and the other employees remaining in the office were considered "surplused". Meaning that they would continue to be paid for 90 days while a new position was sought for them in another department of the company. If during the period of surplus an employee received a corrective action, they would not be assigned a new position and would instead be let go by Defendant on the 90th day after surplus began.

18. Upon Plaintiff's return on June 1, she was told by Donna Washington, her new attendance manager, who called her from Texas that she needed to apply with the Defendant's job accommodation department through the ADA to cover the time period that she was off on her leave that was not covered by FMLA.

19. Plaintiff took all necessary forms to her physician who completed them and returned them to the Defendant's job accommodation department.

20. On or about June 19, Plaintiff received a recommendation from the Defendant' job accommodation department to approve her entire leave time (November 13, 2017 – May 31, 2018) off as an accommodation under the ADA. According to the documentation plaintiff received from the job

accommodation department, Defendant had five days to respond to the recommendation.

21. On or about June 24, five days later, Plaintiff contacted Donna Washington ("Washington") to confirm that her leave had been approved by Defendant. Washington told the Plaintiff that she would get back to her and take there was no time limit to respond, she could take as long as she wanted to respond.

22. Previously, Plaintiff's new manager spoke with her on or about June 15 and informed her that Washington had called her and told her that Plaintiff would not be eligible to be reassigned to a new department until a decision was reached on her leave status under the ADA.

23. During the period of June and July 2018, other employees who were on surplus status like the Plaintiff were leaving the office as they were being reassigned to new positions. Some of those employees had less seniority than Plaintiff meaning that she would have been reassigned before them but for her leave not being approved by Defendant's attendance manager or attendance department, which had been previously been approved by the job accommodation department.

24. During July 2018, Plaintiff continued to work at her location. She became uneasy because she continued to receive no response from Washington and knew that she needed that to get a reassignment during her surplus period.

25. Multiple times Plaintiff contacted Washington via email or phone and repeatedly received the response; we'll get back to you when we get back.

26. In or about July 2018, Plaintiff called the executive vice president of her union and explained the situation she was in and status.

27. After various correspondences between the union, Washington and Debbie Walters, Plaintiff is asked to a meeting with her boss, Sekeena Barbour, to have a conference call with Washington and others.

28. Sekeena Barbour, her manager, is excited for Plaintiff when she invites her to the conference call because she thought that would be the meeting where she was getting approval of her leave and Barbour knew that Plaintiff was anxious to get her new position, as were the other employees remaining on surplus.

29. During the conference call, held on or about July 24, 2018, Washington read a letter aloud stating that Plaintiff's request for her leave (November 13, 2017 – May 31, 2018) to be an accommodation under the ADA was denied and she was placed on a three day suspension with a final warning for

excessive absenteeism. Plaintiff was also given a three day suspension from work as part of the discipline.

30. Multiple people in the room gasped hearing this announcement.

31. Plaintiff was in shock and could hardly speak. Her union representative who was present in the room was in tears. It was very rare that Defendant skip the entire discipline process and go all the way to a final warning when someone had no prior corrective actions and a 24-year record of excellent performance.

32. Because of the corrective action, it meant that Plaintiff's last day with Defendant was August 30, 2018 since she had received a corrective action during the 90-day surplus period.

33. If Plaintiff had not received a corrective action during the 90- day period after her return to work on June 1, she would certainly have been placed in a new position.

34. Plaintiff's union diligently went through the grievance process on her behalf, grieving the discipline, but Defendant continually denied the grievance stating it had acted with just cause.

35. Plaintiff's last day of employment was August 30, 2018.

36. Plaintiff was disciplined in retaliation for asking for an accommodation to cover her previously approved leave and/or her leave was denied as a reasonable accommodation.

37. On or about July 25, 2018, Plaintiff filed a charge with the EEOC alleging violations of the ADA and retaliation.

38. The EEOC issued Plaintiff a right-to-sue letter on September 26, 2018.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

39. Plaintiff incorporates by reference the preceding paragraphs.

40. Plaintiff is a person within the meaning of Section 101(7) of the Americans with Disabilities Act as Amended (ADAAA), 42 USC 12111(7).

41. Defendant meets all of the requirements for employer status under the ADAAA. 42 USC 12111(5)(a).

42. At all relevant times, Plaintiff was an individual with a disability within the meaning of section 3(2) of the ADAAA. 42 USC 12102(2).

43. Specifically, Plaintiff had a physical impairment that substantially limited one or more of her major bodily functions, had a record of the impairment, and was regarded by Defendant as having the impairment.

44. Plaintiff is a qualified individual with a disability as that term is defined in ADAAA, 42 USC 12111(8).

45. Plaintiff was treated differently than others because of her disability.

46. Plaintiff, is an individual who, with reasonable accommodation, could have performed the essential functions of her position.

47. Plaintiff took a leave of known duration to receive treatment for her disability which was approved by Defendant. After the leave, when Plaintiff returned to work, Defendant disciplined Plaintiff because she took the leave.

48. Because Plaintiff had already taken the leave and returned to her previous position, the leave could not have caused a hardship and the Defendant violated the ADA when it denied her a reasonable accommodation.

49. Because the Plaintiff was disciplined and ultimately terminated because she took the leave, the Defendant violated the ADA and/or retaliated against her.

50. Defendant refused to accommodate Plaintiff's disability or engage in the interactive process.

51. Defendant failed to make an individualized inquiry into Plaintiff's disability and requested accommodations before denying each accommodation.

52. Plaintiff was not allowed to work after August 30, 2018, because of being regarded as disabled, requesting an accommodation, or because of her disability.

53. Defendant's failure to make reasonable accommodations and wrongfully failing to return Plaintiff to work constitutes discrimination against Plaintiff with respect to terms and conditions or privileges of employment.

54. Defendant's conduct constitutes a violation of the ADAAA.

55. Defendant failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for her.

56. Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

57. As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment advancement opportunities.

58. In addition, Defendant's failure to make reasonable accommodations for Plaintiff has exacerbated her already existing medical conditions.

59. Further, Defendant's failure to make reasonable accommodations to Plaintiff caused her to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – RETALIATION

60. Plaintiff incorporates by reference the preceding paragraphs.

61. Plaintiff is a person within the meaning of Section 101(7) of the Americans with Disabilities Act as Amended (ADAAA), 42 USC 12111(7).

62. Defendant meets all of the requirements for employer status under the ADAAA. 42 USC 12111(5)(a).

63. At all relevant times, Plaintiff was an individual with a disability within the meaning of section 3(2) of the ADAAA.  42 USC 12102(2).

64. Because the Plaintiff sought an accommodation under the ADA she was disciplined and ultimately terminated.

65. Because the Plaintiff took a leave under the ADA she was disciplined and ultimately terminated.

66. Because Plaintiff asserted her rights under the ADA she was disciplined and ultimately terminated.

67. As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment advancement opportunities.

WHEREFORE, Plaintiff requests that this Honorable court award her:

a) A judgment of damages, past and future, in whatever amount she is found to be entitled;

b) Compensatory damages in whatever amount she is found to be entitled;

c) Emotional distress damages in whatever amount she is found to be entitled;

d) Punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; and an award of interest, costs, and reasonable attorney fees.

Dated: December 21, 2018               Respectfully Submitted,

                                       BURGESS SHARP & GOLDEN, PLLC


                                       /s/ Heidi T. Sharp_____
                                       Heidi T. Sharp P69641
                                       43260 Garfield, Suite 280
                                       Clinton Township, MI 48038
                                       (586) 226-2627
                                       heidi@burgess-sharp.com


## JURY DEMAND

Plaintiff requests a jury trial in the above-captioned matter.

                                       Respectfully Submitted,

                                       BURGESS SHARP & GOLDEN, PLLC


                                       /s/ Heidi T. Sharp_____
                                       Heidi T. Sharp P69641
                                       43260 Garfield, Suite 280
                                       Clinton Township, MI 48038
                                       (586) 226-2627
                                       heidi@burgess-sharp.com